# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **RICHARD L. RIGGLEMAN**, | ) ) ) ) | Civil No.: 5:10cv00092 |
| *Plaintiff*, | ) ) | |
| v. | ) ) | **REPORT AND RECOMENDATION** |
| **MICHAEL ASTRUE**, Commissioner of Social Security, | ) ) ) ) | |
| *Defendant* | ) ) ) | By: Hon. James G. Welsh U. S. Magistrate Judge |

This appeal by Richard L. Riggleman is the latest installment in his nearly twelve-year effort to obtain a Social Security Administration ("agency") award of a period of disability and disability insurance benefits ("DIB") [1] under Title II and for Supplemental Security Income ("SSI") [2] under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. § 1381 *et seq*., respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The record shows that the plaintiff protectively filed his applications on June 30, 2000, alleging that he became disabled on October 15, 1999 due to heart, lung and back problems.

---

[1] The plaintiff's insured status for DIB expired December 31, 2005. (*E.g*., R.568).

[2] The plaintiff's period of eligibility for SSI extends through the date of the ALJ's October 26, 2006 decision.

(R.394-395). With the Appeals Council's denial of his most recent review request (R.552-554,559-561) the ALJ's unfavorable decision dated October 26, 2006 now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer to the plaintiff's Complaint, the Commissioner filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on January 24, 2011 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and each has also been heard at oral argument.

### I. Standard of Review

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is

2

'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642).

## II.     Case History

After submitting his claim for DIB and SSI in June 2000, it was denied both initially and on reconsideration. (R.394). A first administrative hearing was thereafter held on January 22, 2002 (R.708-751), and on March 18, 2002 an administrative law judge ("ALJ ") issued an unfavorable decision in which he concluded *inter alia* that the plaintiff "d[id] not have any impairment or impairments that significantly limit[ed] his ability to perform basic work-related activities." (R.394-397). Granting the plaintiff's subsequent request for review, the Appeals Council remanded the case to the ALJ with instructions to consider certain evidence in the record that suggested the plaintiff did in fact suffer from one or more *severe* [3] impairments, to consider further treating source opinions in the record pursuant to 20 C.F.R. §§ 404.1527 and 416.927, and to evaluate the plaintiff's subjective complaints according to the criteria of Social Security Ruling 96-7p and relevant agency regulations. (R.402-404)

Following the Appeals Council remand, the plaintiff's case was assigned to a second ALJ, and in compliance with the remand order the ALJ held a second hearing on September 18,

---

[3]  Quoting *Brady v. Heckler*, 724 F.2$^d$914, 920 (11$^{th}$Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4$^{th}$Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 404.1520(c).

3

2003. (R.405-408,518-551,636-664). On January 16, 2004 the second ALJ also issued an unfavorable decision. (R.20-31,581-592). In this decision the ALJ summarized the plaintiff's medical records in considerable detail. He found the plaintiff's post heart attack status, his headaches, his sleep apnea and his back problems were all "severe" impairments. He found the plaintiff's allegations regarding the extent of his limitations were not totally credible for reasons he expressly outlined. Similarly, he found the treating source opinions of Drs. Daniel Perry and Bart Balint concerning the plaintiff's functional limitations also lacked support in the objective medical evidence and were contradicted by other medical opinions in the record. Although he concluded that the plaintiff was no longer physically capable of performing any of his past relevant work, the ALJ concluded at the final decisional step that the plaintiff remained capable of performing a range of sedentary work. (*Id.*).

After the ALJ's issuance of his decision, the plaintiff once again sought Appeals Council review. (R.15-16,670,672). Finding no basis for changing the ALJ's decision, the Appeals Council denied the review request on September 29, 2004. (R.665-667).

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), the plaintiff then sought this court's review. (R.599-601). Based on his review of the record and in a Memorandum Opinion, dated September 19, 2005, Judge Conrad concluded that the medical record supported the ALJ's finding that through the date of the ALJ's decision the plaintiff retained "sufficient physical capacity" to perform a limited range of sedentary work activity and that the conflicts in the medical record did not compel a finding of total disability; however, he additionally concluded

4

that the ALJ's hypothetical inquiry to the vocational witness failed to include the plaintiff's weakness and reduced range of upper left extremity motion. (R.602-609). Therefore, it was concluded that the plaintiff had established "good cause" to remand, and by a final order pursuant to "sentence four" of 42 U.S.C. § 405(g) the plaintiff's case was remanded to the agency for a supplemental administrative hearing. (R.610).

On December 21, 2005, following entry of Judge Conrad's opinion and associated remand order, the Appeals Council once again returned the plaintiff's claim to the ALJ. (R.627-629). Pursuant thereto, on March 9, 2006 a third ALJ hearing was held. (R.752-799). Once again, the plaintiff testified. *Inter alia,* he was continuing to see either Dr. Perry (his primary care physician) or Balint Pain Management (Drs. Balint and Audet) on an occasional basis; he continuing to have left shoulder problems and weakness in his left hand; he was continuing to experience the multiple pain-related and other subjective symptoms; he was continuing to get his medications from the doctor; he continued to be physically able to drive, and on a daily basis he continued to do "nothing - - really much of nothing." (R.756-766,769-770,773-782).

Also testifying at the third ALJ hearing his case was Gerald Wells, Ph.D. After classifying the plaintiff's prior work and noting his lack of any skills transferable to sedentary work, the following hypothetical questions were asked and answered.

    ALJ:   So given this gentleman's age, which you know is going to be 49 --
            VE:   Um-hum.
            ALJ:   -- he's limited in education, sixth grade
            VE:    Sixth Grade?

ATTY: Um-hum.

* * *

ALJ: He can't read and write too well. His IQ is in the 70s - -

* * *

ALJ: But he read on a, you know, a - -

VE: Marginal.

ALJ: - - first, second, third, fourth grade level --

VE: Okay.

ALJ: - - and arithmetic, maybe - -

VE: Sure.

ALJ: - - makes change, that kind of thing - -

VE: Okay.

ALJ: - - according to the test that was given. What kind of sedentary jobs would there be for somebody like that in clean air?

VE: Right. There's going to be a person who, considering for the purposes of this hypothetical,[is] a younger person with a marginal education, . . . and the kind of jobs that that person would be do[ing] would be very low level service jobs and they would be factory jobs. One . . . such job would be that of sedentary cashier. *** A person with those limitations could do the job of a sedentary inspector, production inspector. * * *[He] could do the job such as a bench assembler. * * *

ALJ: Are they consistent with the DOT?

VE: Yes, Sir, and they're just representative, Your Honor.

ALJ: Would [the bench assembly and inspector] allow basically for a sit/stand option . . . ?

VE: Um-hum.

6

> ALJ: Could you either stand or sit doing these jobs at your will as long as you didn't leave the work station?
>
> VE: Well, with the production inspector, that usually is the case. With the bench assembly that's a very difficult to get up and down. * * * there is some flexibility, but that - - bench assembly job is not as flexible as the production - -
>
> ALJ: Okay.
>
> VE: -- inspector jobs.
>
> ALJ: And these are in clean air.
>
> VE: Yes, sir, for the most part.
>
> ALJ: Now, Mr. Riggleman tells us he's right handed and you heard him testify that he can work at desk level with his left arm. That doesn't really bother him. But you can't do any of this overhead reaching with the left arm - -
>
> VE:` Um-hum.
>
> ALJ: - - the nondominant arm. Would that affect any of those jobs.
>
> VE:` I don't think that there - - there's no reaching above the shoulder level in any of those jobs that I have seen.

(R.788-791).

In his subsequent written decision, the ALJ first noted that the plaintiff's DIB insured status expired at the end of December 2005. Then, after reviewing and evaluating the medical record and the opinion and testimonial evidence, including the vocational evidence, the ALJ concluded that the plaintiff's history of cardiac problems, headaches, respiratory problems and back pain all constituted "severe" impairments, that none of these conditions (either singularly or

7

in combination) was of listing level severity, and at a minimum that the plaintiff retained the functional capacity to perform sedentary work with a sit/stand option, requiring no use of his non-dominant hand for reaching above the shoulder and no handling or manipulating objects above table height. (R.569-577).

After the ALJ issued his written decision (R.566-577), the plaintiff again requested Appeals Council review. (R.559-561). Relying once again on the same medical record and the same opinion evidence, the plaintiff asserted error on the basis of the ALJ's failure to find him disabled by application of the "grids", the ALJ's failure to find him disabled pursuant to listing 1,04 (Disorders of the Spine), and his failure give controlling weight to the opinions of Drs. Perry and Balint, (*Id.*; *see* R.556-558). After consideration, this request of the plaintiff for further administrative review was rejected by the Appeals Council on August 31, 2010. (R.552-554).

In doing so, the Appeals Council expressly took notice of the ALJ's compliance with its directions on remand to obtain and consider certain additional vocational evidence. It then explained in some detail its reasons for finding no reason "to assume jurisdiction." (R.552). With specific references to relevant parts of the ALJ's decision, the Appeals Council found that the ALJ's adequately considered all treating physician opinions and also adequately considered the plaintiff's back impairment in his most recent decision which incorporated by reference his January 2004 decision. (R.552). Likewise, in rejecting the plaintiff's assertion that he established a listing-level back disorder, the Appeals Council took note of the absence of any

8

specific supporting evidence and the absence of any specific evidentiary reference by counsel to support such a conclusion. (*Id*.).

### III. Discussion

The plaintiff's record of medical treatment does not appear to be disputed by the parties, and on review the medical record is consistent with the ALJ's summaries set forth in his January 2004 (R.20-31,581-592) and October 2006 (R 566-577) decisions. Likewise, relevant and cogent to the issues presented by the plaintiff in his previous request for court review, the medical record is fully consistent with Judge Conrad's summary in his September 19, 2005 memorandum opinion (R.605-608).

After the Appeals Council rejected his most recent review request, the plaintiff instituted this court challenge to the Commissioner's denial of his DIB and SSI applications. Therein, he advances multiple arguments of reversible error. First, he contends that his age (48 on the date he was last insured for DIB) and his "illiteracy" (within the meaning of Medical Vocational Guideline ("Grid rule") 201.00(h)) combine to compel a finding of disability and DIB entitlement pursuant to the Grid rule 201.17. *See* 20 C.F.R. pt. 404, subpt. P, appx 2, §§ 201.00(h) and 201.17. Second, irrespective of Judge Conrad's contrary finding, [4] the plaintiff

---

[4] In his September 14, 2005 memorandum opinion, Judge Conrad took note of the multiple objective diagnostic studies "fail[ed] to document the existence of any condition which could reasonably be expected to result in total disability," and he concluded, "Despite the cogent arguments of plaintiff's counsel, the court does not believe that the medical records, standing alone, support a determination of total disability." (R.605).

9

again argues that the ALJ lacked a cognizable basis to reject the opinions of his treating physicians. Having established his functional inability to perform any of his past relevant work, as his third argument the plaintiff contends that the Commissioner failed "to meet his burden of proving" that the plaintiff can do other work that exists in significant numbers in the national economy. Fourth, he argues that the ALJ's findings concerning his complaints of disabling pain and other subjective symptoms were unsupported by substantial evidence. And lastly, the plaintiff also argues that the ALJ erred by failing to consider Dr. Perry's December 2001 opinion that his depression made him incapable of even low stress work. (R.299).

In support of the first four of these claims of error, the plaintiff relies on selective statements in the record from Drs. Perry, Balint and Audet and on the vocation-related opinion of Barry Hensley, Ph.D. Pointing to the 2001, 2002 and 2003 medical opinion submissions from Dr. Perry [5] outlining the plaintiff's multiple chronic medical problems and associated functional limitations (*see* R.214-217,287,288,298-301,469,483-486) and the similar opinions of Drs. Balint and Audet (*see* R.282-285,289,310-313,430-431,493) outlining the plaintiff's "constant" and "chronic" pain due to daily headaches, neck and thoracic pain, chronic tendonitis, sleep apnea, and associated functional limitations, the plaintiff argues that his evidence demonstrates his physical inability to return to any of his past relevant work or even to perform the physical demands of the limited range of sedentary work suggested by the vocational testimony and adopted by the ALJ in his decision. Similarly, the plaintiff also relies on certain results of Dr. Hensley's 2001 educational testing and the attendant findings that demonstrate the plaintiff's

---

[5] Although a residual functional capacity assessment by Dr. Perry dated 12/21/01 contains an unchanged condition update notation dated 03/28/2008 (R.558), the medical record contains no treatment records from Dr. Perry dated later than 02/24/2004 (R.695,704-707).

10

significant intellectual and educational deficits and which show, the plaintiff argues, his functional illiteracy and his disability at age forty-five by application of "Grid" rules 201.00(h) and 201.17. *See* 20 C.F.R. pt. 404, subpt. P, appx. 2.

### A.

As outlined and evaluated in considerable detail in his written decision, [6] the ALJ took note of Dr. Perry's records, variously dated between February 1997 and February 24, 2004, documenting the plaintiff's treatment for multiple health-related complaints, including *inter alia* a history of cardiac problems, "mild" hypertension and "slightly elevated" blood sugar (R.251), insomnia (R.249), chest pain of unknown etiology (R.239), chronic low back pain (R.267), left shoulder pain (R.265), asthma and chronic obstructive pulmonary disease (R.270-271), headaches (R.249), sleep apnea (R.270), depression (R.299), and non-cardiac related chest pain (R.250). (*see* R.22-24,569-573; R.239-281,314-318,704-707). He recognized the plaintiff's longitudinal record of pain-related treatment by Drs. Balint and Audet. (R.25-27,569-573; *see* R.322-341,430-431,466-467,473-475,481,508-509,691-703). He expressly considered their opinions to the effect that the plaintiff was unable to engage in work activity due to pain and multiple chronic medical problems. And based on the record he concluded that their opinions were not supported by objective evidence and were contradicted by the opinions of multiple specialists and physicians. (R.23-24,569-573,587-589).

---

[6] In his October 2006 decision, the ALJ incorporated by reference the evidentiary summary (R.583,¶ 2--R.588,¶3; RF.22,¶2--27,¶3) from his January 2004 decision (R.569), and references herein to the ALJ's decision are intended also to reference this January 2004 evidentiary summary.

11

Although both of these treating sources have consistently maintained that the plaintiff lacks the functional ability to perform even low stress work activity due to depression and debilitating pain associated with degenerative disc disease, pain, daily headaches and shoulder pain, neither Dr. Perry nor Dr. Balint provided any objective clinical or laboratory findings to support these opinions. The absence of medical support in the record for their opinions is evident by the fact the plaintiff rejected Dr. Perry's recommendation that he undergo a diagnostic MRI scan in an effort to identify any possible organic cause of his headache complaints. (R.247). It is evident by the results of an EKG in September 2000 that was "normal" (R.225); by the results of a consultive neurological evaluation, including a lumbar myelogram and CT scan, at University of Virginia Medical Center (UVaMC) in January 2001 that demonstrated "no significant degenerative change" and only mild narrowing of the spinal canal (R.239,343-355); by the absence of any demonstrated cardiac abnormality (R.294,353,372); by the results of respiratory spirometry in September 2000 that demonstrated only a "mild" airway obstruction (R.226); by the consultive examination functional ability findings [7] of William Barrish, M.D., in 2003 (R441-445); by a consulting psychologist's 2003 finding that the plaintiff "may be mildly depressed at [that] time" (R.488-490); by the conclusions of another consultive psychological in June 2003 that the plaintiff "appeared to possess the intellectual capacity necessary to perform

---

[7] In his assessment of the plaintiff's residual functional capacity, Dr. Barrish said: "At this time, I feel the patient should avoid heavy physical exertion secondary to his cardiac and respiratory status. Range of motion is limited in the lumbar spine and left shoulder. Strength is limited in the left supraspinatus. At this time, I feel the patient could sit, stand and walk six to eight hours per day; however, he would need frequent allowance for rest breaks and position changes. Lifting and carrying can be done with 10 pounds frequently and 20 pounds occasionally with limitations secondary to the findings in the lumbar spine and left shoulder. Grasping and handling could be done occasionally with some decrease in the left side secondary to residual symptoms of carpal tunnel syndrome and ulnar neuropathy. Bending, crawling, crouching, and stooping should be avoided secondary to the findings in his low back, bilateral knees as well as secondary to obesity. Gait is slow with no assistive device. The claimant is able to drive short distances. Vision is within normal limits with corrective lenses. Hearing and cognition are both within normal limits." (R.444).

12

simple and repetitive tasks" and was capable of coping with routine work stressors (R.451-458); and by the non-disabling results of musculoskeletal screening and functional capacity evaluation in September 2003 (R.495-506). In short, the objective studies performed in connection with treatment of plaintiff's symptoms all fail to document the existence of any condition which could reasonably be expected to result in total disability for all forms of work, and they also fail to support the disabling nature and severity of any condition identified by Drs. Perry and Balint to support their functional assessments.

Based on his review of the same medical record, Judge Conrad also concluded that the medical records, standing alone, neither supported a determination of total disability nor a determination that the opinions of Drs. Perry and Balint were supported by objective studies documenting the existence of any condition which could reasonably be expected to result in total disability for all forms of work. *Riggleman v. Barnhart*, 2005 U.S. Dist. LEXIS 22180, *6-7; 106 Soc. Sec. Rep. Service 406 (WDVa, 2005). Nothing in the plaintiff's brief or argument in connection with his current appeal suggests anything to the contrary.

**B.**

If it is assumed for the sake of argument that the record supports a finding that the plaintiff has a severe medically determinable physical or mental impairment which prevents him from performing any of their past relevant work, the plaintiff's reliance on the "Grids" to support a finding of disability is nevertheless misplaced. Despite his attorney's repeated assertions that the plaintiff is "illiterate," substantial evidence supports the finding that he is not illiterate as that

13

term is used in the agency's regulations, [8] He attended school through the sixth and possibly the seventh or eighth grade. (R.100,547,634,639,711-712,788). He wears glasses "for reading." (R.451). He demonstrated an ability to read the agency's forms at least in part. (R.105). He demonstrated an ability to sign his name in a clearly legible cursive script. (R.59,102,109). And in his own words, he can at least read and write a "little" and can "basically" read a newspaper. (R.634,639,756).

Therefore, in crafting his hypothetical questions to the vocational witness and in making his residual functional capacity determination, substantial evidence clearly supports the ALJ's conservative assessment of the plaintiff's reading ability as "marginal" and his arithmetic ability as limited to making change. (R.789). Likewise, contrary to the plaintiff's contention on appeal, there is substantial evidence in the record to demonstrate the non-applicability of the Grid rules upon which he seeks to rely.

## C.

Ignoring completely the functional limitations outlined by Dr. Barrish as part of his consultive medical examination, [9] Judge Conrad's earlier finding that the vocational testimony was deficient only the failure to consider the extent of the plaintiff's left (non-dominant) upper

---

[8] 20 C.F.R. §§ 404.1564(a)(1) and 416.964(a)(1) define *illiteracy* to mean "the inability to read or write." Pursuant to these regulations, the agency considers a person to be illiterate "if [he or she] cannot read or write a simple message" and to be a person who "has little or no formal schooling."

[9] *See* footnote 7.

14

extremity [10] and the subsequent explicit consideration of this limitation on remand (R.788-791), the plaintiff nevertheless continues to argue that the Commissioner has failed to meet his burden to establish his ability to perform other work that exists in substantial numbers in the national economy. On review this contention of error is patently and obviously without merit.

As noted by Judge Conrad in connection with the plaintiff's earlier appeal to this court, Dr. Barrish provided "what is seemingly the most comprehensive evaluation of plaintiff's combination of impairments." *Riggleman v. Barnhart, supra* at *11. The record as now constituted also demonstrates that on remand the vocational testimony took into consideration each of the plaintiff's vocationally significant limitations. *See Walker v. Bowen*, 889 F.$2^d$ 47, 50 (4th Cir. 1989). Therefore, the ALJ's reliance on the vocational testimony as the basis for his finding that the plaintiff retained the residual functional capacity to perform a limited range of alternate work is supported by substantial evidence. *See, generally,*.20 C.F.R.. §§ 404.1520(f) and 416,920(f).

**D.**

Also contrary to the plaintiff's argument, the ALJ appropriately evaluated the nature and extent of the plaintiff's subjective complaints, including heart problems, depression, persistent severe pain, and chronic breathing problems. In essence, this argument is an invitation by the plaintiff for the court to re-weigh evidence that was considered and weighed by the ALJ. It is, however, "the duty of the [ALJ] . . . and not the responsibility of [this court] to make findings of

---

[10] *Riggleman v. Barnhart, supra* at *11-12.

15

fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (citation omitted).

Both as outlined herein above and as outlined by the ALJ in great detail in his decision, the medical record largely contradicts both the treating source opinions and the plaintiff's claims of severe depression, chronic breathing and heart problems and disabling pain. (R.569-575,583-590). He considered all of the symptoms to the extent they can be reasonable accepted as consistent with the objective medical evidence. He recognized the deference to which a treating source's medical opinion should be entitled. He relied on the relevant decisional factors, and with reasonable specificity he stated his reasons for deciding that neither of the treating source functional assessments nor the plaintiff's subjective complaints were accurate or supported by the record. *See e.g.*, Social Security Regulations ("SSRs") 96-2p, 96-5p and 96-6p; 20 C.F.R. §§ 404.1529 and 416.929; *see also Sterling Smokeless Coal Co. v. Akers*, 131 F.3$^d$ 438, 439-440 (4th Cir. 1997).

### E.

As previously noted, the plaintiff also argues that the ALJ erred by failing to consider Dr. Perry's December 2001 opinion that his depression made him incapable of even low stress work (R.299). This contention of error is advanced despite the absence of any mental health treatment, despite the lack of any referral for a psychiatric assessment, despite the plaintiff's express denial to Dr. Perry that he had any depressive symptoms in February 2004 (R.704), and despite the

16

absence of any finding of a depressive or other mental health condition by the consultive psychologist at the time of his psychological assessment in June 2003 (R.251-256).

### F.

The recommendation that the Commissioner's final decision be affirmed does not suggest that the plaintiff is totally free of pain and other subjective discomfort or does not have health issues. The objective medical record, however, simply fails to demonstrate that his condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision in this case for the court to make is "not whether the [plaintiff] is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it is for the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

### IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;

2. In his adjudication of the plaintiff's claims, the ALJ gave proper consideration to the objective and subjective evidence related to the plaintiff's pain, depression, chronic breathing, and other subjective symptoms;

17

3. The ALJ's assessment of the plaintiff's credibility was based on substantial evidence;

4. The ALJ's decision to give minimal decisional weight to the treating source functional ability opinions upon which the plaintiff seeks to rely is adequately supported by substantial evidence in the record.

5. The ALJ properly resolved the evidentiary conflicts about which the plaintiff complains on appeal;

6. The plaintiff is not illiterate within the meaning of the applicable agency regulations;

7. The plaintiff is not disabled by application of Grid rules 201.00(h) and 201.17;

8. The Commissioner met his burden of proving that the plaintiff can do other work that exists in significant numbers in the national economy;

9. Substantial evidence in the record supports the finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

10. The plaintiff has not met his burden of proving a disabling condition through the date he was last insured; and

11. All facets of the Commissioner's final decision should be affirmed.

**V.     Recommended Disposition**

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 10th day of February 2012.

                                                _s/ *James G. Welsh*_
                                                 United States Magistrate Judge